Shearman & Sterling LLP
599 Lexington Avenue
New York, New York  10022
(212) 848-4000 (Tel)
(212) 848-7179 (Fax)

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CAITLIN SANCHEZ, performing as "DORA THE EXPLORER," | 10 Civ. 7854 (TPG) |
| Plaintiff, | |
| - against - | **DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S REQUEST FOR "OTHER RELIEF"** |
| MTV NETWORKS, a division of Viacom, International, Inc., d/b/a NICKELODEON, AND NICKELODEON/VIACOM CONSUMER PRODUCTS, INC. | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................... 1

      A.     Ms. Sanchez's Voiceover Work for "Dora the Explorer" ......................... 1

      B.     Ms. Sanchez's Lawsuit and Settlement With Viacom.............................. 2

      C.     Ms. Sanchez's First Attempt to Vacate the Settlement............................. 4

      D.     Ms. Sanchez's Second Attempt to Vacate the Settlement ......................... 5

ARGUMENT.............................................................................................. 6

   I.     PLAINTIFF'S ATTACK ON THE SUBJECT-MATTER JURISDICTION
          OF THIS COURT HAS NO MERIT .................................................... 6

      A.     The Settlement Agreement May Not Be Collaterally Attacked Under
           Rule 60 on the Basis that the Court Mistakenly Asserted Subject-
           Matter Jurisdiction Over the Underlying Dispute...................................... 6

      B.     This Court Has Subject-Matter Jurisdiction Under Any Test.................... 8

CONCLUSION............................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)..........................................................................9

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ...................................................................9

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*,
    390 U.S. 557 (1968)...................................................................................................................8

*Baella-Silva v. Hulsey*, 454 F.3d 5 (1st Cir. 2006) ...................................................................7, 8

*Baker v. Amsted Indus., Inc.*, 656 F.2d 1245 (7th Cir. 1981) ........................................................11

*Central Vt. Public Serv. Corp. v. Herbert*, 341 F.3d 186 (2d Cir. 2003)........................................7

*Dragone v. M.J. Raynes, Inc.*, 695 F. Supp. 720 (S.D.N.Y. 1988)................................................10

*Filanto, S.p.A. v. Chilewich Int'l Corp.*, 789 F. Supp. 1229 (S.D.N.Y. 1992) ..............................12

*Hart Enters. Int'l, Inc. v. Anhui Provincial Imp. & Exp. Corp.*, 888 F. Supp. 587
    (S.D.N.Y. 1995)......................................................................................................................12

*Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35 (2d Cir. 1997) ...................................................9

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987)........................................8

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988) .....................................................9

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)........................................................................9

*Monumental Blunders, Inc. v. CBS Corp.*, No. 00 Civ. 220, 2000 WL 777893
    (S.D.N.Y. June 15, 2000)..........................................................................................................9

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986)..................................................................... *passim*

*Quesnel v. Prudential Ins. Co.*, 66 F.3d 8 (1st Cir. 1995) ............................................................11

*Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154 (10th Cir. 1991)................................................11

*Steiner v. Atochem, S.A.*, No. 89 Civ. 7990, 2002 WL 1870322 (S.D.N.Y. Aug. 13, 2002).......6, 8

*Stoll v. Gottlieb*, 305 U.S. 165 (1938)............................................................................................7

*Textron Lycoming Reciprocating Engine Div., Avco Corp.  v. United Auto., Aerospace &*
*Agric. Implement Workers of Am.*, 523 U.S. 653 (1998) ....................................................11

*United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010) .........................................6, 7

*Watts v. Pinckney*, 752 F.2d 406 (9th Cir. 1985) ...........................................................7

## STATUTES

9 U.S.C. § 3 .................................................................................................12

29 U.S.C. § 185(a) ..........................................................................................8

Fed. R. Civ. P. 60(b) ............................................................................... *passim*

## PRELIMINARY STATEMENT

This is Plaintiff's second attempt to undo a Settlement Agreement and final judgment entered over sixteen months ago.  In the first attempt, Plaintiff's prior counsel raised purported procedural defects in the settlement process, which the Court categorically rejected at a hearing on November 1, 2011.  In the face of that clear ruling, Plaintiff's current counsel now argues that the Court lacked subject-matter jurisdiction over Plaintiff's underlying claims.  This new argument fares no better than the prior one.  The Second Circuit has clearly stated that lack of subject-matter jurisdiction is generally not a proper basis on which to vacate a final judgment under Rule 60(b).  *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986) ("Even assuming that this case was not properly within the jurisdiction of the district court, appellees may not now collaterally attack that court's exercise of jurisdiction.").  The only exception is where there is "no arguable basis" for jurisdiction amounting to a "clear usurpation of power" by the district court.  *Id.*  Here, the Court's jurisdiction is more than arguable:  it is mandated by federal law, which provides for exclusive federal jurisdiction over disputes that involve the interpretation of collective bargaining agreements such as the agreement at the core of this dispute.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Ms. Sanchez's Voiceover Work for "Dora the Explorer"

Plaintiff Caitlin Sanchez, a minor, worked for Uptown Productions Inc., a subsidiary of Viacom, as a voiceover artist in the role of "Dora" for the animated television series "Dora the Explorer."  Sanchez voiced Dora for approximately three and a half years.  (Compl. ¶¶ 1, 48.)

---

[1]    Below, Defendants provide a summary of the key facts and procedural history of this litigation. The facts are fully set out in Defendants' previous briefing, most recently in Defendants' Memorandum of Law dated July 22, 2011 in Opposition to Plaintiff's Motion to Vacate.  (Dkt. No. 41.)  See also Defendants' Memoranda of Law dated October 26, 2010 in Support of Motion to Dismiss (Dkt. No. 11) and dated November 3, 2010 in Opposition to Plaintiff's Motion to Remand (Dkt. No. 13).

Ms. Sanchez's employment with Uptown was subject to the collective bargaining agreement between Uptown and the American Federation of Television and Radio Artists ("AFTRA Collective Bargaining Agreement").  (Decl. of Kirsten Cunha dated March 20, 2012 ("Cunha Decl.") Ex. A, at 1.)  Ms. Sanchez also entered into a Certificate of Authorship and Services Agreement for Creative Personnel (the "Services Agreement") with Uptown.  (Cunha Decl. Ex. B.)  As permitted by the AFTRA Collective Bargaining Agreement, the Services Agreement set forth more favorable terms for Ms. Sanchez than the minimums guaranteed by the AFTRA Collective Bargaining Agreement for certain services.  (Cunha Decl. Ex. A ¶ XXI; *id.* Ex. B, at 2.)[2]  The Services Agreement expired in 2009 and was not renewed.

      B.      <u>Ms. Sanchez's Lawsuit and Settlement With Viacom</u>

Ms. Sanchez filed a complaint against Defendants in New York Supreme Court on October 6, 2010, asserting claims for quantum meruit, unjust enrichment, and breach of contract. (Compl. ¶¶ 80-98.)  Ms. Sanchez's claims centered on alleged under-compensation for her work as "Dora," including merchandizing and residuals.[3]  (Compl. ¶¶ 1, 6, 34, 40-42, 49-50, 55, 80-88.)  That same day, Uptown filed a demand for arbitration with AFTRA.

On October 19, 2010, Defendants removed the action to this Court pursuant to Section 301 of the Labor Management Relations Act ("LMRA").  (Dkt. Nos. 1, 3.)  Ms. Sanchez then filed a motion to remand.  (Dkt. No. 5.)  On October 26, 2010, Defendants filed a motion to dismiss the action or for a stay in favor of arbitration (Dkt. Nos. 9-11) and opposed Plaintiff's

---

[2]      For example, under the Services Agreement, Ms. Sanchez earned more per "Dora" episode than provided for under the AFTRA Collective Bargaining Agreement.  In addition, the Services Agreement provided that:  "[t]o the extent that any of the provisions of the AFTRA [Collective Bargaining] Agreement are more favorable to [Ms. Sanchez] than this Agreement, the AFTRA [Collective Bargaining] Agreement shall govern.  (Cunha Decl. Ex. B ¶ 8.)

[3]      In the television industry, the term "residuals" is commonly used to mean payment to an actor or other professional for each rerun after an initial showing of a television episode.

motion to remand (Dkt. No. 13).  Ms. Sanchez requested that the Court stay proceedings on the motion to dismiss pending resolution of the motion to remand.  The Court denied Ms. Sanchez's application on November 8, 2010 (Dkt. No. 15), but also separately ordered that in light of negotiations regarding a possible settlement, various deadlines were stayed and extended (Dkt. No. 14).

The parties proceeded to settle Ms. Sanchez's claims, entering into a Settlement Agreement on November 15, 2010.  (*See* Dkt. No. 42, Ex. A (filed under seal).)  The settlement had three components.  First, it provided for payments to Ms. Sanchez, representing (i) an advance on compensation due to her in the future for residuals and merchandizing and (ii) a compromise amount for work for which Ms. Sanchez claims she was under-compensated (which Defendants dispute).  (*Id*. at 5-6.)  Second, it provided that Ms. Sanchez could continue certain voiceover work at the AFTRA rate, even though the Services Agreement had expired.  (*Id*. at 2 ¶ 8.)  Finally, it gave Ms. Sanchez the right to conduct audits of Uptown's books and records.  (*Id*. at 2 ¶ 6.)

The Settlement Agreement was submitted to the Court, along with a Verified Petition to Settle Claim signed by Ms. Sanchez's parents.  (*Id*. at 23-31.)  The Petition was supported by affidavits of Ms. Sanchez, her parents, and her then-lawyer, Mr. Balestriere.  (*Id*. at 34-44.)  As provided for in the Settlement Agreement, the parties entered into a Stipulation of Voluntary Dismissal with Prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure on November 17, 2010, which was approved by this Court on December 1, 2010.  (Dkt. Nos. 20, 21.)

Following the Stipulation of Dismissal, Ms. Sanchez accepted the full amount of compensation owed under the agreement, and appeared and performed the work for nine

additional "Dora" episodes as contemplated in the settlement.  However, Ms. Sanchez declined

(for unknown reasons) to undertake an audit of the books and records of Uptown.  (Cunha Decl.

Ex. C (Tr. of Hearing, Nov. 1, 2011), at 30.)

     C.    <u>Ms. Sanchez's First Attempt to Vacate the Settlement</u>

On June 26, 2011, Susan Chana Lask, a new lawyer for Ms. Sanchez, filed a Motion to

Vacate the Settlement Agreement pursuant to Fed. R. Civ. P. 60(b).  (Dkt. No. 31; Dkt. No. 37 at

8-9.)  Ms. Lask also sought an order directing Ms. Sanchez's previous lawyer, Mr. Balestriere, to

disgorge attorneys' fees.  (Dkt. No. 37 at 1.)  Ms. Lask alleged that Mr. Balestriere

misrepresented the law to Ms. Sanchez and her parents and engaged in "extortive behavior."  (*Id.*

at 6.)  Ms. Lask did not allege any wrongdoing by Defendants.

The Court heard oral argument on the Motion to Vacate on November 1, 2011.  After

hearing from the parties, as well as Mr. Balestriere, the Court denied the motion to vacate the

Settlement Agreement:

> I am denying the motion to overturn the settlement agreement provided
> that – and I am assuming that the plaintiffs will conduct the audit or audits they
> are allowed to do, and they can do what one would expect, and that is to send an
> auditor or audit team to Viacom to carry out that audit.
> And if there is a dispute about the terms or the nature of the audit, then
> that dispute can be resolved in an appropriate way.  But there is no concrete
> dispute before me now because the plaintiffs have not even attempted to send an
> auditor, so I have no concrete dispute.  That's the ruling.

(Cunha Decl. Ex. C, at 32:19-33:4.)  The Court went on to hear argument regarding the

attorneys' fees charged by Mr. Balestriere to Ms. Sanchez.  The Court directed Mr. Balestriere to

make a motion to approve his fees.  (*Id.* at 38.)  The Court concluded by directing the parties to

submit an order "which would reflect the terms on which the motion [to vacate] was denied and

then reflect the fact that the court will examine the attorney's fee situation and will approve a

fee."  (*Id.* at 38:21-23.)  Ms. Sanchez did not appeal the Court's ruling denying the Motion to

Vacate.  Nor did Ms. Sanchez or any of her attorneys undertake an audit of Uptown's books and records as was her right under the Settlement Agreement.

  D.   <u>Ms. Sanchez's Second Attempt to Vacate the Settlement</u>

  On February 20, 2012, the Court entered an order confirming the substitution of new counsel for Ms. Sanchez.  (Dkt. No. 64.)  New counsel proceeded to file a second challenge to the Settlement Agreement, styled as an "Opposition to Former Counsel's Application for Attorneys' Fees and Other Relief."  (Dkt. No. 63.)  New counsel argues that "[c]areful consideration of the fee application, as discussed below, will warrant denial of the fee application and vacatur of the approval of the Settlement Agreement."  (Dkt. No. 63 at 11.)

  Plaintiff goes to some length to avoid characterizing her new request to vacate the Settlement Agreement as a challenge under Fed. R. Civ. P. 60(b), presumably because Plaintiff's previous challenge under Rule 60(b) was denied.  (*See* Dkt. No. 63 at 23.)  As with the first motion to vacate, Plaintiff's submissions focus on alleged misdeeds by Mr. Balestriere.  (Dkt. No. 63 at 12-20.)  In addition, Plaintiff asserts that the Stipulation of Dismissal should be vacated because the Court lacked subject-matter jurisdiction.[4]  This submission replies to Plaintiff's new submissions attacking the subject-matter jurisdiction of this Court.

---

[4]   Although it is not identified as such, this new assertion of lack of subject-matter jurisdiction must be treated as in the alternative, since the papers primarily argue for the denial of a fee application currently pending before this Court (which assumes that this Court has jurisdiction).

## ARGUMENT

I. **PLAINTIFF'S ATTACK ON THE SUBJECT-MATTER JURISDICTION OF THIS COURT HAS NO MERIT**

    A.   The Settlement Agreement May Not Be Collaterally Attacked Under Rule 60 on the Basis that the Court Mistakenly Asserted Subject-Matter Jurisdiction Over the Underlying Dispute

Plaintiff now seeks to collaterally attack the Settlement Agreement on the basis that this Court did not have subject-matter jurisdiction over the underlying dispute. However, the law in the Second Circuit is clear:  lack of subject-matter jurisdiction is not a ground on which a final judgment may be vacated, barring exceptional circumstances not present here. The relevant rule, Rule 60(b)(4), provides that a judgment may be overturned upon a showing that the judgment is "void." This rule is narrow by design, *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1377 (2010) (noting that the circumstances warranting relief under Rule 60(b)(4) are few because "otherwise, [the] exception to finality would swallow the rule"), and it does not permit the Settlement Agreement in this case to be overturned.

In *Nemaizer v. Baker*, the Second Circuit affirmed the narrow scope of Rule 60(b)(4). 793 F.2d 58. In that case, the defendant removed an action to federal court, after which the plaintiff voluntarily dismissed his claims with prejudice. The time to appeal expired. The plaintiff later sought to vacate the judgment under Rule 60(b)(4) on the ground that the action was improperly removed and therefore the district court lacked subject-matter jurisdiction, rendering the judgment void. The Second Circuit rejected this argument, holding that:  "Even assuming that this case was not properly within the jurisdiction of the district court, appellees may not now collaterally attack that court's exercise of jurisdiction." *Nemaizer*, 793 F.2d at 64; *accord Steiner v. Atochem, S.A.*, No. 89 Civ. 7990, 2002 WL 1870322, at *3 (S.D.N.Y. Aug. 13, 2002) ("Even assuming *arguendo* that the Court lacked jurisdiction over the case because

Atochem improperly removed the litigation, that would not make the so-ordered dismissal notice *per se* void.").[5]

Importantly, the Second Circuit ruled in *Nemaizer* that even if, in hindsight, it appeared that the district court lacked subject-matter jurisdiction, that did not render a judgment "void" for purposes of a collateral attack under Rule 60(b)(4). The Court explained that the plaintiffs could have pressed their jurisdictional objection before the judgment was entered, or alternatively on direct appeal. 793 F.2d at 64. "Because they did neither, they are now barred by principles of *res judicata* and the interest in finality of judgments from mounting a collateral attack on a prior judgment in the present action." *Id.*

The only circumstance in which a subject-matter jurisdiction argument will succeed under Rule 60(b)(4) is if a court had a "total want of jurisdiction" amounting to a "clear usurpation of power." *Student Aid Funds*, 130 S. Ct. at 1377 (internal citation omitted). As long as there is an "arguable basis" for a federal court's subject-jurisdiction, relief under Rule 60(b)(4) will not obtain. *Nemaizer*, 793 F.2d at 65. Cases overturning final judgments on the basis of "a total want of jurisdiction" are few and involve extreme circumstances far removed from the facts of this case. *Compare Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985) (total want of jurisdiction due to strict requirements of actions in admiralty under 46 U.S.C. § 745) *with Central Vt. Public Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003) (upholding

---

[5]     Plaintiff appears to argue that the Court was required to rule on the Motion to Remand prior to entering the Stipulation of Dismissal. That is incorrect. A federal court is not required to explicitly announce or determine its subject-matter jurisdiction. Rather, "[e]very court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938); *see also Baella-Silva v. Hulsey*, 454 F.3d 5, 11 (1st Cir. 2006) (approving district court's implicit finding of jurisdiction to enter a settlement agreement and denying appeal based on allegation that removal was improper). The proper means by which to challenge that determination is by direct appeal, not collateral attack. *Nemaizer*, 793 F.2d at 65.

denial of motion to vacate because there was "at least an arguable basis for jurisdiction" of the

bankruptcy court), *Nemaizer*, 793 F.2d at 65 (upholding judgment where district court "could

reasonably have found" that ERISA's remedial provision completely preempted New York labor

law provision), *Baella-Silva v. Hulsey*, 454 F.3d 5, 11 (1st Cir. 2006) (upholding settlement

agreement where there was an "arguable basis" for district court's subject-matter jurisdiction),

*and Steiner*, 2002 WL 1870322, at *3 (so-ordered dismissal not *per se* void even if the court

lacked subject-matter jurisdiction due to improper removal).

      B.    <u>This Court Has Subject-Matter Jurisdiction Under Any Test</u>

      Viacom's position on subject-matter jurisdiction is set forth at length in its Opposition to

Plaintiff's Motion to Remand (Dkt. No. 13).  As explained therein and in the discussion below,

the Court here has far more than an "arguable basis" for its exercise of subject-matter

jurisdiction.

      Section 301(a) of the LMRA provides for exclusive federal jurisdiction in cases involving

collective bargaining agreements.  29 U.S.C. § 185(a).[6]  As a consequence of the strong federal

policy of fashioning national labor standards and laws, the United States Supreme Court has long

held that Section 301 completely preempts state law claims that require interpretation or

substantive analysis of a collective bargaining agreement.  *See Metro. Life Ins. Co. v. Taylor*, 481

U.S. 58, 65 (1987) (due to the "extraordinary pre-emptive power" of the LMRA, § 301 "converts

an ordinary state common law complaint into one stating a federal claim for purposes of the

well-pleaded complaint rule"); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists &*

*Aerospace Workers*, 390 U.S. 557, 560 (1968) ("An action arising under s 301 is controlled by

---

[6]     Section 301 states:  "Suits for violation of contracts between an employer and a labor
organization representing employees in an industry affecting commerce . . . may be brought in
any district court of the United States having jurisdiction of the parties, without respect of the
amount in controversy or without regard to the citizenship of the parties."

federal substantive law even though it is brought in a state court."); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004) ("§ 301 converts state causes of actions into federal ones for purposes of determining the propriety of removal").

The test for whether an action purportedly based on state law is preempted by Section 301 of the LMRA and subject to federal jurisdiction is straightforward:  Will resolution of the matter "require interpretation or substantial analysis of the terms of a collective bargaining agreement"?  *Monumental Blunders, Inc. v. CBS Corp.*, No. 00 Civ. 220, 2000 WL 777893, at *3 (S.D.N.Y. June 15, 2000); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 n.8 (1988) ("§ 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement"); *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 851-52 (1987) ("action that necessarily rests on an interpretation of terms in a collective-bargaining agreement is pre-empted by § 301.") (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218-19 (1985)).

While mere consultation of a collective bargaining agreement does not constitute "interpretation," *see Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35 (2d Cir. 1997), any substantive analysis of a collective bargaining agreement, especially where provisions of the agreement are in dispute, necessarily requires the court to interpret the agreement.  *See Monumental Blunders*, 2000 WL 777893, at *3 (denying motion to remand where issue of severance pay under services contract required interpretation of severance pay provisions of collective bargaining agreement); *Allis-Chalmers*, 471 U.S. at 215 (holding that complaint alleging state law tort claims should have been dismissed "as pre-empted by § 301" where court must interpret labor contract to analyze "whether there was an obligation under [the contract] to provide the [disputed benefit payments] in a timely manner, and if so, whether Allis-Chalmers'

conduct breached that implied contract provision"); *Dragone v. M.J. Raynes, Inc.*, 695 F. Supp. 720, 723-25 (S.D.N.Y. 1988) (denying motion to remand and finding state law claims of wrongful discharge and tortious interference with contractual rights pre-empted by § 301 because both would "involve analysis of" the collective bargaining agreement).

Here, Ms. Sanchez asserted a claim for breach of her Services Agreement based on the allegation that Defendants failed to adequately compensate her for voiceover services.  (Compl. ¶¶ 36, 97.)  Had the Court ultimately reached the merits, this claim could not have been decided without substantive analysis of the AFTRA Collective Bargaining Agreement.  The Services Agreement expressly refers to and generally incorporates the AFTRA Collective Bargaining Agreement.  (Cunha Decl. Ex. B ¶ 8.)  In addition, the Services Agreement references specific provisions in the AFTRA Collective Bargaining Agreement that relate to the amount of compensation to which plaintiff is entitled for specific services.  (*Id.* ¶¶ 5(b), 6, 8, 10(a), 10(b), Rider A ¶ E.)  Indeed, Ms. Sanchez even alleged a direct violation of the provisions in the AFTRA Collective Bargaining Agreement governing additional recording sessions.  (Compl. ¶ 34 (alleging violation of AFTRA Rules "under which Caitlin works").)  These claims all plainly would have required substantive interpretation and analysis of the AFTRA Collective Bargaining Agreement.

Moreover, Ms. Sanchez also asserted that the Services Agreement was unconscionable. (Compl. ¶¶ 70, 72, 72(d) (asserting vague and confusing language with reference to "the maximum extent no[t] prohibited by the [AFTRA Collective Bargaining Agreement]" (internal citation omitted)).)  This claim would have required interpretation and analysis of the AFTRA Collective Bargaining Agreement to ascertain whether, as alleged, the references to that Collective Bargaining Agreement in the Services Agreement were misleading, vague or

confusing.  *See Harless v. CSX Hotels, Inc.*, 265 F. Supp. 2d 640, 645-46 (S.D.W. Va. 2003)

(claim that "Defendant breached the terms of the collective bargaining agreement, which are

alleged to be vague. . .obviously falls within the preemptive force of [§ 301 of the LMRA]. . . .").

And even if Plaintiff were correct that the Services Agreement was void, resolution of her

claim would still have required interpretation of the Collective Bargaining Agreement.[7]  AFTRA

is the exclusive bargaining agent for performers who provide voiceover services in animated

programs for Uptown.  (*See* Cunha Decl. Ex. A, at 1.)  The terms of the AFTRA Collective

Bargaining Agreement therefore apply to all performers who perform such services for Uptown.

*See Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 11 (1st Cir. 1995) (employee subject to collective

bargaining even though he was not a union member); *Saunders v. Amoco Pipeline Co.*, 927 F.2d

1154, 1156 (10th Cir. 1991) ("an individual employed in a craft governed by a collective

bargaining agreement is bound by the terms of that agreement, regardless of his union

membership"); *Baker v. Amsted Indus., Inc.*, 656 F.2d 1245, 1248-49 (7th Cir. 1981) (collective

bargaining agreement negotiated by representative becomes "the law of the plant for all

employees").  If Plaintiff had successfully argued that her separate Services Agreement was

void, she would still have been subject to the usual AFTRA terms that cover compensation for

the work she performed and her claims would still have required substantive analysis of the

AFTRA Collective Bargaining Agreement.  These include terms governing the various services

for which she alleges she was provided insufficient compensation.  (*See, e.g.*, Cunha Decl. Ex. A

¶ I (minimum session fees for programs); ¶ II (voiceover compensation); ¶ III(E) (compensation

---

[7]    Plaintiff's reliance on *Textron Lycoming Reciprocating Engine Div., Avco Corp.  v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 523 U.S. 653 (1998) is misplaced.  There, the Supreme Court considered the application of § 301 to a claim for fraudulent inducement.  Here, Plaintiff has challenged specific provisions of the Services Agreement (which incorporates the AFTRA Collective Bargaining Agreement), engaging § 301 of the LMRA.

for promotional announcements); ¶ XIII (crediting of overscale compensation and advance payment for residuals).)

Finally, the issue of whether the Court has subject-matter jurisdiction is independent from the issue of whether all or part of the underlying dispute is arbitrable.  Here, removal was proper under the Section 301 of LMRA, which confers exclusive subject-matter jurisdiction in this Court.  Had the dispute proceeded, the Court ultimately would have had to decide whether Ms. Sanchez's claims should have been referred to arbitration.  But the fact that the claims may be arbitrable does not deprive the referring court of subject-matter jurisdiction.  Indeed, the Federal Arbitration Act provides that if a matter is "referable to arbitration," a district court "shall . . . stay the trial of the action" in favor of arbitration.  9 U.S.C. § 3.[8]  The power to stay a trial pending arbitration confirms that a valid arbitration clause has no impact on the existence of subject-matter jurisdiction.  *Filanto, S.p.A. v. Chilewich Int'l. Corp.*, 789 F. Supp. 1229, 1241-42 (S.D.N.Y. 1992).

The LMRA preempts Ms. Sanchez's claims, granting the Court exclusive jurisdiction over the dispute.  The Court's subject-matter jurisdiction in this case is not only "arguable," but also mandated by clear federal law.

---

[8]     The court may either issue a stay or dismiss the action upon a determination that "no useful purpose would be served by a stay."  *Hart Enters. Int'l, Inc. v. Anhui Provincial Imp. & Exp. Corp.*, 888 F. Supp. 587, 591 (S.D.N.Y. 1995).

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's renewed attempt to vacate the Stipulation of Dismissal.

Dated: New York, New York
           March 20, 2012

Respectfully Submitted,

SHEARMAN & STERLING LLP

By:   /s/  Stephen Fishbein
        Stephen Fishbein
        Kirsten Nelson Cunha

599 Lexington Avenue
New York, NY 10022
(212) 848-4000 (Tel)
(212) 848-7179 (Fax)

*Attorneys for Defendants*