UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
CAITLIN SANCHEZ, performing as                  :
"DORA THE EXPLORER",                            :
                                                :       10 Civ. 7854 (TPG)
                          Plaintiff,            :
                                                :       **OPINION**
          – against –                           :
                                                :
MTV NETWORKS, et al.,                           :
                                                :
                          Defendants,           :
          – and –                               .
                                                .
BALESTRIERE FARIELLO,                           .
                                                .
                          Intervenor-           .
                          Defendant.            .
                                                .
------------------------------------------------x

    The court has approved an infant's compromise in this case. The court has also rejected numerous efforts to vacate the settlement. Now pending before the court is a motion to approve the attorneys' fees of plaintiff's former counsel, the Balestriere Fariello law firm ("the Firm").

    The court hereby declines to consider the Firm's application for fees in connection with the CESD settlement, awards the Firm $193,363.73 for its work on the MTV settlement, and awards the Firm 15% of any future recoveries pursuant to the audit rights set forth in the settlement agreement.

## BACKGROUND

The complicated history of this litigation need not be fully recounted here. However, the pertinent facts will be discussed.

At some point in the summer of 2010, the parents of infant Caitlin Sanchez approached John Balestriere about having the Firm represent Sanchez in a potential lawsuit against her former employer, MTV Networks and Nickelodeon/Viacom Consumer Products, Inc. (collectively, "MTV"), and also potentially against her former talent agency, Cunningham Escott Slevin Doherty ("CESD") Talent Agency. Sanchez had been performing as the voice of "Dora the Explorer," a character on a Nickelodeon cartoon, and she claimed she had not been appropriately compensated by MTV.

Although the Firm initially billed the Sanchezes on an hourly basis, Balestriere and Sanchez's mother subsequently entered into a contingency fee arrangement for a suit against MTV. As pertinent here, the arrangement provided that the Firm would receive 35% of any recovery, which would increase to 37.5% if the recovery occurred after discovery commenced. Sanchez herself did not sign that agreement and is not personally mentioned in the agreement.

Balestriere eventually filed a lawsuit on Sanchez's behalf against MTV in Supreme Court, New York County, which was removed to this court on the basis that the Labor Relations Management Act ("LRMA") completely preempted Sanchez's state law claims.

Sanchez moved to remand. Defendants opposed and moved to dismiss. Discovery commenced. The parties entered into settlement negotiations. While both motions were pending, the parties notified the court that they reached a settlement. The settlement, in general terms, provided Sanchez with a lump sum payment, as well as rights to conduct future audits of MTV in order to determine whether MTV was in compliance with its obligations, and also required Sanchez to perform some additional services for MTV in return for further compensation. Sanchez, her parents, and Balestriere all reviewed and signed the settlement agreement.

Because Sanchez is an infant, the court was required to approve the terms of the settlement. The court entered an order approving the settlement on November 30, 2010. The procedures governing infant's compromises also required the court to approve an award of attorneys' fees if the fees were to be paid out of the settlement amount. However, in approving the settlement, the court was not made aware of the attorneys' fees sought by the Firm and did not approve any such fees.

At some point after the settlement, the Firm represented Sanchez in negotiations with CESD concerning a claim against CESD. She obtained a monetary settlement from CESD without ever filing a lawsuit.

Pursuant to the contingency fee arrangement, the Firm claims to have become entitled to 37.5% of the fees from both the MTV and CESD

settlements. The settlement funds were paid directly to the Firm, which kept its share of those funds before paying Sanchez.

After the CESD settlement, Sanchez terminated the Firm, apparently because of a dispute over the tax implications of the settlements. Represented by new counsel (who has since also been terminated), Sanchez moved to vacate her settlement with MTV Networks. Sanchez claimed that for various reasons the settlement had operated as a "fraud on the court," including that the court had approved the settlement without reviewing the Firm's fees. The court denied the motion and rejected this challenge to the settlement, which the court found to have been a fair and reasonable settlement for Sanchez, but directed the Firm to submit a fee application so that the court could approve its proposed attorneys' fee award.

In the fee application, the Firm seeks the court's approval of a 37.5% fee arising from the settlement with MTV, which the court approved, as well as 37.5% of the settlement with CESD, which was never the subject of litigation before this court and which was thus never presented to this court for this court's approval. The Firm also seeks the court's approval of an award of 30% of any recovery from any future audits that Sanchez may undertake pursuant to the agreement. Sanchez opposes the application.

**DISCUSSION**

When approving an infant's compromise, the court has an obligation to approve the reasonableness of attorney's fees:

> the Court shall authorize payment to counsel for the infant or incompetent of a reasonable attorney's fee and proper disbursements from the amount recovered in such an action, whether realized by settlement, execution or otherwise and shall determine the said fee and disbursements, after due inquiry as to all charges against the fund.

S.D.N.Y. Local Rule 83.2(a)(2). The court also "retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003); see also Schlesinger v. Teitelbaum, 475 F.2d 137, 141 (3d Cir. 1973) ("[I]n its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingent fees."). This ancillary jurisdiction includes the power to "inquire into fee arrangements . . . to protect the client from excessive fees." In re Goldstein, 430 F.3d 106, 110 (2d Cir. 2005). Thus, the court may reduce an attorney's fees even where, as here, the attorney has already been paid the fees. In re Austrian & German Bank Holocaust Litig., 317 F.3d at 98-99 ("Courts may order attorneys to return fees the client has paid pursuant to contract.").

The lawyer should receive "suitable compensation . . . for his services," and the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." See Johnson v. City of

New York, No. 08 Civ. 3673, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010) (quotations omitted).  The court should consider "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved."  Lide v. Abbott House, No. 05 Civ. 3790 (SAS), 2008 U.S. Dist. LEXIS 13826, at *2-3 (S.D.N.Y. Feb. 25, 2008).  The court should consider, but need not accept, the parties' contingency fee agreement.  Johnson, 2010 WL 5818290, at *4.

   As a preliminary matter, the court does not have jurisdiction to approve the Firm's attorneys' fees from the CESD Settlement.  CESD was not sued in this court or, to the court's knowledge, in any other court.  Although the parties appear to have a dispute regarding the reasonableness of the CESD settlement and the resulting fees, that dispute is not a part of this lawsuit.  Thus the court expresses no view on the reasonableness of that settlement or the propriety of the fees sought by the Firm in connection with that settlement.

   Regarding the 37.5% of fees requested by the Firm in connection with the MTV settlement, the court finds that such an award is justified.  This was a complex lawsuit against a major corporate adversary with great resources and skilled attorneys.  During the case's duration, it rightly took up a great deal of time for Balestriere and the Firm.  Although Sanchez now questions the wisdom of the settlement, it cannot

be denied that she quickly obtained a substantial sum of money and valuable audit rights, and the court has repeatedly approved the reasonableness of the settlement. Balestriere is an experienced litigator who would generally command a high billing rate. Had the Firm charged Sanchez by the hour, it would be seeking substantially more fees than it is currently seeking. Although the court recognizes that it is not bound by the amount set forth in the contingency fee agreement, the court finds that based on the factors above, 37.5% of the recovery from the MTV settlement represents a fair and reasonable fee for the Firm for its work on the MTV settlement. The Firm is entitled to $193,363.73 in connection with the MTV settlement.

  Finally, regarding the percentage of future recoveries sought by the Firm, the court accepts that, to the extent there is a future recovery as a result of an audit or audits pursuant to the settlement agreement, those recoveries were made possible by the able representation of the Firm. Thus, the Balestriere firm is entitled to some degree of compensation for helping Sanchez obtain these potential future recoveries. However, the Firm requests the court approve in advance an award of 30% of any future recovery. This fee appears excessive, given that the Firm has been terminated and will not be handling the audits, which are likely to require the time and legal skill of other attorneys. However, it would be appropriate to award the Firm 15% of the proceeds of any such audit. This would compensate the Firm for its work in securing the audit rights,

but avoid giving the Firm a windfall as a result of audits that are being conducted by others.

In opposition to this fee request, Sanchez has generally argued that the settlement was improperly entered and should be vacated. However, the court has already denied a motion to vacate the settlement, and the court finds these arguments unpersuasive. Sanchez also argues that Sanchez did not actually sign the contingency fee agreement and that nobody acting on her behalf ever formally retained the Firm to represent her. Thus, they argue that the Firm should be entitled to no fees at all. However, Balestriere filed a lawsuit as Sanchez's attorney, achieved a settlement on her behalf, presented the settlement agreement to the court as her attorney (after she and both of her parents signed it), and Sanchez accepted the benefits of that settlement, which the court has approved. Nobody ever objected that the Firm did not represent Sanchez until now. Given these facts, it would be a strange result for the court now to find that the Firm did not actually represent Sanchez and is entitled to no fees simply because Sanchez herself did not sign the contingency fee agreement, which the court did not even treat as binding.

## Conclusion

For the foregoing reasons, the court awards the Firm $193,363.73 for his work on the MTV settlement and 15% of any future recoveries as a result of the audit rights set forth in the settlement agreement.

SO ORDERED.

Dated: New York, New York
       June 8, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/8/12

- 9 -